# EXHIBIT "A"

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** (also referred to herein as "Agreement") is made and entered into by and among Tamie Guzzo for herself, her dependents, heirs, executors, administrators, successors and assigns ("Employee"), and ProSource, Inc., its subsidiaries, affiliates, related entities, agents, attorneys, employees, partners, shareholders, officers, directors, insurers, predecessors and successors in interest, and employee benefit plans (hereinafter collectively referred to as "ProSource" or "Employer").

## WITNESSETH

On January 10, 2017, Employee was terminated from her employment as a Recruiter/Sales and Operations Manager from ProSource. After her termination, Employee claimed she was owed overtime wages pursuant to the Fair Labor Standards Act ("FLSA") and that ProSource may have violated other rights she had. (All claims are referred to as "Claims"). ProSource disagreed with Employee's allegations.

Employee and Employer now desire to settle fully and finally all differences between them related to Claims or which arise out of or relate to Employee's employment with Employer and all other claims he has through the date of this Agreement without further expenditure of time or expense of litigation and, for that reason, have entered into this Agreement.

NOW THEREFORE, in consideration of the promises and releases herein contained, it is agreed as follows:

## 1. Settlement of FLSA Claims.

This Agreement this Agreement is intended to settle and resolve all Claims, including, but not limited to, claims arising under the FLSA.

## 2. Non-Admission of Liability.

This Agreement is a full release and settlement of all claims of whatever nature which have been asserted or which could have been asserted by Employee, including, but not limited to, those relating to Employee's hiring, events occurring during her employment, and termination of employment. While this Agreement resolves all issues between Employee and Employer, it does not constitute an admission by Employer of any violation of federal, state, or local law, ordinance or regulation or of any violation of Employer's policies or procedures or of any liability or wrongdoing whatsoever, such being expressly denied. Employee agrees not to assert that this Agreement is an admission of guilt or wrongdoing and acknowledges that Employer does not believe or admit that it that has done anything that is a violation of law. Thus, neither this Agreement nor anything in this Agreement shall be construed to be or shall be admissible in any proceeding as evidence of liability or wrongdoing by Employer. This Agreement may be introduced, however, in any proceeding to enforce the Agreement.

3. **No pending Charges.**

Employee represents that, to the best of her knowledge, information, and belief, no charges, claims or lawsuits have been filed with any Federal, State, or local administrative agency or court by her or on her behalf against ProSource. In the event any charge or lawsuit is filed on his behalf, Employee agrees to request dismissal. In the event that any governmental agency pursues a charge or lawsuit on Employee's behalf, Employee agrees that she has received full compensation for all losses she may have sustained while employed by ProSource.

4. **Submission of Agreement for Court Approval.**

The parties agree to submit this Agreement and file the necessary documents with the United States District Court for the Northern District of Georgia to obtain approval of this settlement. Counsel for Employee will be responsible for preparing and submitting the appropriate documents to have this settlement approved by the Court.

5. **Consideration and Benefits.**

In consideration of the covenants undertaken and releases given herein by Employee, Employer agrees that within five days after the execution of this Agreement and approval of the settlement by the Court, Employer will pay to Employee the gross amount of Twenty-two thousand nine ~~two~~ hundred fifty dollars ($22,900.00) for all claims she may have including, but not limited to:

(a) $ 7,750 for wages, overtime wages, back wages, and front wages;
(b) $ 7,750 for compensatory damages, personal injury damages, pain and suffering, emotional distress, and all other types of compensation that Employee may claim from Employer; and
(c) $ 7,400 for attorneys' fees and expenses.

6. **Tax Indemnification.**

Pursuant to Employee's request, Employer has allocated the amounts paid to Employee as described in paragraph 5 above and will issue a form 1099 to her. Employer has been provided the allocated amounts by Employee and Employer agrees to credit the amounts as requested by Employee. Employee agrees that she shall be exclusively liable for all federal, state, and local taxes, if any, which may be due as a result of the consideration received or apportionment Employee has requested, other than any Employer share of FICA or FUTA hereafter deemed to be owed. Employee will indemnify and hold harmless Employer from any and all federal, state, or local income taxes, penalties, interest and expenses of any kind that may be due on the amounts set forth in paragraph 5 above, because of the characterization of the amounts as 1099 income or because of lack of tax and payroll withholdings, except for clerical errors in withholding made by Employer. Employee further agrees not to make any claim against Employer or any other person or entity based on how amounts paid under this Agreement to tax authorities are reported or if an adverse determination is made as to the tax treatment of any amounts payable under this Agreement. In addition, Employee understands and agrees that Employer has no duty to try to prevent such an adverse determination. In the event there is ever a determination that any portion of the payments is taxable wages, Employer's sole responsibility shall be to pay the Employer's

share of FICA and FUTA, and Employee shall pay all other taxes and Employee will hold Employer harmless from any such claims. In the event that any federal, state, or local taxing authority seeks to collect from Employer such taxes, penalties, or interest which would have been collectible from Employee, Employee agrees to reimburse Employer for such taxes, interest, and penalties within a reasonable time, and if Employee fails to make reimbursement, for any attorney's fees and costs of collection.

7.   **No Employment or Reinstatement**.

Employee agrees that she will not reapply for employment with Employer and she releases Employer from any obligation to consider her for any position in the event she makes application for re-employment. Employee agrees that in view of the facts relating to her employment this provision is fair.

8.   **Complete Release By Employee**.

As a material inducement to Employer to enter into this Agreement, Employee, on her own behalf and on behalf of her descendants, dependents, heirs, executors, administrators, assigns, and successors, hereby covenants not to sue and irrevocably and unconditionally releases, acquits, and forever discharges Employer from any and all charges, complaints, claims, liens, contracts, covenants, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, wages, back wages, front wages, any other form of compensation and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, in law, equity, or otherwise, including, but not limited to, rights arising out of alleged violations of any contracts, express or implied, any covenant of good faith and fair dealing, express or implied, or any tort, or any legal restrictions on Employer's right to terminate employees, or any claims set forth in the Claims, or any other claims for severance pay, bonus, sick leave, holiday pay, vacation pay, life insurance, health and medical insurance or any other fringe benefit, disability claims; or any claim based upon a federal, state, or other governmental statute, regulation, or ordinance, including, without limitation:

A.   **Claims Released**

(1)   Title VII of the Civil Rights Act of 1964, <u>as amended</u> 42 U.S.C. § 2000e to 2000e-17 (1988) (including any amendments made by the Civil Rights Act of 1991 or successor legislation);

(2)   42 U.S.C. §§1981 and 1983;

(3)   Family and Medical Leave Act, 29 U.S.C. § 2601 <u>et. seq.</u>;

(4)   Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, <u>et seq.</u> (employee benefits);

(5)   Age Discrimination in Employment Act, 29 U.S.C. § 621, <u>et. seq.</u>;

(6)   Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 <u>et. seq.</u>;

(7) Equal Pay Act, 29 U.S.C. § 206 et. seq.;

(8) Georgia Equal Pay Act, O.C.G.A. § 34-5-1;

(9) Fair Labor Standards Act, 29 U.S.C. § 201 et. seq.;

(10) any cause of action for discrimination under Georgia law; and

(11) any cause of action for wages, intentional or negligent infliction of emotional distress, assault and battery, harassment, discrimination, negligent retention, supervision or hiring of employees or supervisors, breach of contract, negligence, negligence per se, invasion of privacy, workers compensation or any other state law claim which Employee now has, owns or holds, or claims to have, own or hold, or which Employee at any time heretofore had, owned or held, or claimed to have, own or hold.

**B.    Unknown Claims**

Employee understands that Employee is releasing Claims through the date of this Agreement that Employee may not know about. Releasing claims Employee may not know about is Employee's knowing and voluntary intent, even though Employee recognizes that someday Employee might learn that some or all of the facts Employee currently believes to be true are untrue and even though Employee might then regret having signed this Release. Nevertheless, Employee is assuming that risk and agrees that this Agreement shall remain effective in all respects in any such case. Employee expressly waives all rights she might have under any law that is intended to protect Employee from waiving unknown claims.

**9.    Severability.**

The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, the other paragraphs shall remain fully valid and enforceable. This Agreement shall survive the termination of any arrangements contained herein.

**10.    No False Statements or Assignments.**

Employee warrants and represent that she has not assigned or transferred to any person not a party to this Agreement any released matter or any part or portion thereof, and she shall defend, indemnify, and hold harmless ProSource from and against any claim (including the payment of attorneys' fees and costs) based on or in connection with or arising out of any such assignment or transfer made.

**11.    No Representations.**

The parties represent and acknowledge that in executing this Agreement they do not rely and have not relied upon any representation or statement not set forth herein with regard to the subject matter, basis, or effect of this Settlement Agreement and General Release or otherwise.

12. **Governing Law.**

This Agreement shall be interpreted, enforced, and governed under the laws of the State of Georgia.

13. **Attorney Review.**

The parties represent and agree that they fully understand their rights to discuss all aspects of this Agreement with their private attorneys, that to the extent, if any, that they desired, they have availed themselves of this right, that they have carefully read and fully understand all of the provisions of this Agreement, and that they are voluntarily entering into this Agreement.

14. **Older Worker Benefit Protection Act.**

This Agreement is intended to release and discharge any claims of Employee under the Age Discrimination and Employment Act. To satisfy the requirements of the Older Workers' Benefit Protection Act, 29 U.S.C. Section 626(f), the Employee agrees as follows:

A. Employee acknowledges that she has read and understands the terms of this Agreement.

B. Employee acknowledges that she has been advised in writing to consult with an attorney, if desired, concerning this Agreement and has received all advice he deems necessary concerning this Agreement.

C. Employee acknowledges that she has been given twenty-one (21) days to consider whether or not to enter into this Agreement, has taken as much of this time as necessary to consider whether to enter into this Agreement, and has chosen to enter into this Agreement freely, knowingly and voluntarily.

D. For a seven (7) day period following the execution of this Agreement, Employee may revoke this Agreement by delivering a written revocation to Randy C. Gepp, Esq. This Agreement shall not become effective and enforceable until the revocation period has expired (the "Effective Date"). In the event Employee revokes her consent to this Agreement, any benefit provided to her may be terminated.

15. **Entire Agreement/Modifications to Agreement.**

This Agreement constitutes the entire agreement between Employee and Employer, and supersedes any and all other agreements and understandings, either oral or in writing, between Employee and Employer. All such other agreements, understandings, policies, practices, procedures, if any, shall be of no further force and effect. Any change, modification or waiver of any provision of this Agreement must be in writing and signed by Employee and Employer.

16. **Binding Nature of Agreement.**

The parties have the current intent that all of the terms, covenants, conditions and provisions of this Agreement will be valid and enforceable to the fullest extent permitted by law. It is the further intent of the parties that the rule of construction which provides that the document is construed against the maker thereof be inapplicable in the construction of any of the terms of this Agreement.

17. **Voluntary Nature of Agreement.**

Employee warrants, represents and acknowledges that this Agreement is entered into knowingly and voluntarily as an act of free will; that she is of sound mind; and that she is laboring under no physical, psychological or mental infirmity which would affect either the capacity to understand the terms of this Agreement or to freely enter into and be bound by the provisions of this Agreement. Employee has been advised that she may have this Agreement reviewed by a legal representative of her choice.

18. **Release only Claims Legally Releasable.**

This Agreement is intended to release and discharge only those claims that Employee can legally release. Nothing in this Agreement is intended to release claims that cannot be released by law or prevent Employee from bringing timely administrative charges. Employee has received compensation for any and all such claims and charges by this Agreement.

19. **Mutual Non-Disparagement.**

Employee agrees that she will not make any statements, either oral or written, or take any other actions that disparage or reflect negatively on Employer, except as required by court order or otherwise by law. Likewise, Employer agrees that it will not make any statements oral or written, or take any other actions that disparage or reflect negatively on Employee.

20. **Neutral Reference.**

Employer shall provide a neutral reference, verifying only dates of employment, position(s) held, and last salary earned to any prospective employer or anyone else inquiring into Employee's employment history with ProSource, Inc. Employment inquiries should be directed to the owner of ProSource, Inc., Douglas C. Mills.

PLEASE READ CAREFULLY. THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS, EXCEPT AS OTHERWISE STATED IN THE AGREEMENT.

Executed this __22nd__ day of May, 2017.

_____
Tamie Guzzo

Reviewed and Approved As to Form by:

_____
Louise Smith, Esq.
Attorney for Tamie Guzzo

Agreed and Approved on Behalf of Employer by:

_____
ProSource, Inc.

Reviewed and Approved As to Form by:

_____
Randy C. Gepp, Esq.
Attorney for ProSource, Inc.